IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA K.,[1]

        Plaintiff,                         Civ. No. 3:19-cv-00192-AA

     v.                               **OPINION & ORDER**

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.
_____

AIKEN, District Judge:

    Plaintiff Lisa K. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

    On September 30, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on July 31, 2010. Tr. 18. The application as denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on September 28, 2017. *Id.* On February 28, 2018, the ALJ issued a decision finding Plaintiff not disabled through her date last insured,

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

December 31, 2015. Tr. 30. On January 9, 2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, July 31, 2010, through her date last insured, December 31, 2015. Tr. 20.

At step two, the ALJ found that Plaintiff had the following severe impairments through her date last insured: obesity; degenerative disc disease of the lumbar spine with disc protrusion and stenosis at L1-L2 and L5-S1 status post T12-L1 laminectomy and foraminotomy and L5-S1 laminectomy, foraminotomy, and microdiscectomy; osteoarthritis of the bilateral knees and hips; and lumbar radiculopathy. Tr. 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 23.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: she could occasionally climb ramps and stairs, but never ropes, ladders, or scaffolds; she could occasionally balance, stoop, crouch, crawl, and kneel; she should avoid even moderate exposure to hazards and concentrated exposure to vibration. Tr. 24.

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as an accounts payable/receivable accounting clerk and logistic/shipping and receiving supervisor. Tr. 29. As a result, the ALJ found that Plaintiff was not disabled between the alleged onset date and the date last insured. Tr. 30.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony and (2) improperly weighing the medical opinion evidence. Plaintiff also asserts that the ALJ improperly applied Plaintiff's date last insured and that these errors infected the ALJ's formulation of Plaintiff's RFC and the subsequent non-disability finding.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to

produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In this case, Plaintiff testified at the hearing that she stopped working in July 2010 because her company was being downsized and she worked with management to volunteer to be laid off. Tr. 44-45. Plaintiff volunteered to be laid off because her vertigo was interfering with her ability to work and she felt she should take a break and seek treatment for her condition. Tr. 45. Plaintiff was performing well in her job when she volunteered to be laid off. Tr. 74. Plaintiff testified that she looked for work after being laid off and only stopped searching for work in 2012. Tr. 45.

Plaintiff testified that she has always had a weak back but that her back pain became serious in 2008. Tr. 52. While working, Plaintiff would have to get up and go to the printer between 10 and 20 times per day, which exacerbated her back pain. *Id.* Plaintiff's back pain was also serious when she stopped working in 2010. *Id.* Plaintiff has had three surgeries to treat her back pain, two of which were done in 2015. Tr. 47. Plaintiff rated her pain as an 8 or 9 out of 10 and testified

that medication would reduce that pain to a 5 or 6 out of 10. Tr. 59-60. In the course of seeking treatment, Plaintiff traveled to Taiwan to consult with doctors there, but found the long airplane trip to be extremely painful. Tr. 50-51.

Plaintiff testified that she spends her day cooking, cleaning, and doing laundry but that she must lay down every 2 hours because of her back pain. Tr. 48. She cannot bend or twist and cannot lift more than 15 to 20 pounds. *Id.* Plaintiff prepares food, washes dishes, and goes grocery shopping with help from her husband. Tr. 49, 57. She can do laundry and work in her garden but cannot vacuum. Tr. 49-50. She spends her time watching television, reading, using her tablet computer, going on short walks, and doing her physical therapy exercises. Tr. 50.

Plaintiff estimated that she could sit in a chair for between 1.5 and 2 hours before she would need to change position. Tr. 53. Plaintiff testified that she could stand for between 10 and 15 minutes before needing to sit or lay down and that she lays down twice a day for 10 to 15 minutes at a time and that she lays down twice per day. Tr. 54. Plaintiff testified that she could walk for 20 minutes. *Id.* Plaintiff testified that she could type but must work slowly because of her carpal tunnel syndrome. Tr. 58.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 24-25. The ALJ found that Plaintiff had given inconsistent statements concerning her disability. Tr. 28. In particular, the ALJ noted inconsistencies in Plaintiff's statements concerning why she stopped working and why she continued to not work through her date last insured. *Id.* The ALJ noted that Plaintiff testified that she volunteered to be laid off because of the effects of her vertigo and back pain. *Id.* However,

the ALJ found that Plaintiff did not seek treatment for her back pain until 2013, several years after she testified that her back pain became disabling. Tr. 25, 362-63. The ALJ observed that "[a]lthough her symptoms did progressively worsen thereafter, particularly in 2015 after a fall, the record shows her neurological exams remained largely intact with normal gait, and normal muscle tone and strength." Tr. 25. Plaintiff reported to her treatment providers that she and her husband "made a decision to have her not work and stay at home," after they relocated from California to Oregon. Tr. 354. The ALJ also noted that, during the hearing, Plaintiff testified that she had looked for work through 2012 and that she was unable to "get a very good job," Tr. 45, which the ALJ understood to mean limiting "her search for employment to specific jobs, rather than a job she was able to perform." Tr. 28.

On this record, the Court concludes that the ALJ did not improperly discount Plaintiff's subjective symptom testimony, but rather made a reasonable assessment of her inconsistent statements and testimony concerning her disability.

Plaintiff also contends that the ALJ arbitrarily applied Plaintiff's date last insured, which was December 31, 2015. Plaintiff contends that the ALJ erred by failing to consider information from after Plaintiff's date last insured, which Plaintiff argues will show disabling back pain during the covered period. "[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (internal quotation marks and citation omitted).

In this case, the ALJ did not ignore medical records from after the date last insured, which included further back surgery, but concluded the conditions described were caused by difficulties that only arose after the date last insured. Tr. 26. The ALJ noted that as of the date last insured, Plaintiff was "still reporting improvements in her symptoms." Tr. 25. During an examination in

November 2015, Plaintiff reported that she was "doing okay," with fair pain control and resolved leg pain. Tr. 782. An examination shortly after Plaintiff's date last insured, on January 21, 2016, showed post-surgical improvement and "fair" pain control. Tr. 779. Plaintiff told her treating physician that her pain was "tolerable at this time," and Plaintiff declined her physician's offer of an additional course of physical therapy aimed at improving her back pain. Tr. 781. In March 2016, Plaintiff reported a new onset of pain to her treatment providers. Tr. 763. In a treatment record from April 2016, the physician noted that Plaintiff was reporting a "dramatic change in pain" and that her physicians did not believe it was related to her prior surgery. Tr. 954; *see also* Tr. 1175 (noting improvement in Plaintiff's pain following surgery but worsening back pain and "new pain that 'shoots' down the posterior and lateral right leg into the lateral right foot."). Plaintiff was X-rayed in March 2016 and the procedure revealed no acute skeletal pathology, mild degenerative changes of the cervical and thoracic spine, stable postoperative changes of the lumbar spine, and mils scoliosis with degenerative changes of the lumbar spine. Tr. 712. Plaintiff subsequently underwent another back surgery in June 2017 to treat calcified herniated nucleus pulposus at L5-S1 with right S1 radiculopathy, which has caused "right leg pain for about a year," prior to the surgery and which had not been alleviated by conservative therapies. Tr. 1504. The ALJ noted, however, that this third surgery occurred more than a year after the date last insured. Tr. 27. "[W]hile post-date last insured evidence cannot be rejected solely as remote in time, it can be rejected on the grounds that the evidence itself is not retrospective." *Hale v. Berryhill*, No. 3:17-cv-00697-HZ, 2018 WL 2221675, at *14 (D. Or. May 15, 2018) (internal quotation marks and citation omitted, alterations normalized). That is what the ALJ concluded in the present case, noting that the post-date last insured pain symptoms were a "dramatic" change and that she had experienced improvement through her date last insured. Tr. 26-27. "Notably, the record does not

contain any opinions from a treating physician indicating that the claimant was disabled prior to her date last insured or even has limitations greater than those determined in this decision." Tr. 29.

On this record, the Court concludes that the ALJ did not fail to consider medical records from after the date last insured, but reasonably concluded that those post-coverage developments did not support a finding of disability within the covered period.

## II.     Medical Opinion Evidence

Plaintiff contends the ALJ erred in weighing the medical opinions of reviewing physicians Martin Kehrli, M.D., and Thomas Davenport, M.D. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

Dr. Kehrli and Dr. Davenport opined that Plaintiff was limited to lifting or carrying 20 pounds occasionally and 10 pounds frequently and that she could stand and/or walk for 6 hours in an 8-hour workday and sit for the same amount of time. Tr. 84-85, 97. Dr. Kehrli and Dr. Davenport opined that Plaintiff court occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds; that she could frequently balance, occasionally stoop, and that she had no limitations on kneeling, crouching, or crawling. Tr. 85, 98. They opined that she must avoid even

moderate exposure to hazards. Tr. 86, 99. The ALJ gave the opinions of Dr. Kehrli and Dr. Davenport "some weight, as they are generally consistent with the medical record of evidence," but concluded that "slightly more limitations are deemed appropriate based on the claimant's testimony of subjective limitations." Tr. 29.

Plaintiff objects that Dr. Kehrli and Dr. Davenport only reviewed the medical records through the date last insured and did not see the medical records from 2016 and 2017 and failed to account for Plaintiff's testimony concerning additional restrictions suggested by her treating physicians. The ALJ reasonably concluded, however, that the post-coverage medical records did not support a finding of disability during the covered period and further concluded that the opinions of Drs. Kehrli and Davenport were consistent with the medical records from the covered period, although he allowed for more restrictions in the RFC than the reviewing physicians assessed based on Plaintiff's own testimony. The Court concludes that the ALJ did not err by doing so.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this ___31st___ day of January 2022.

        /s/Ann Aiken
       ANN AIKEN
       United States District Judge